UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                               )
ANTONE DESOUZA,                )
                               )
          Plaintiff,           )
                               )
     v.                        )    C.A. No. 23-514 WES
                               )
STATE OF RHODE ISLAND,         )
DEPARTMENT OF ADMINISTRATION,  )
                               )
          Defendant.           )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Senior District Judge.

Plaintiff Antone DeSouza charges his employer, Defendant State of Rhode Island, Department of Administration (the "State"), with violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and state employment law. Compl. 1, ECF No. 1. DeSouza alleges that the State: (1) failed to reasonably accommodate his disability when it first declined his request not to work at a certain location and then did not respond to his later request to work remotely, (2) retaliated against him for making these requests, and (3) denied him promotion and transfer opportunities. Id. at 6-7. The State now moves to dismiss this suit. State's Mot. Dismiss, ECF No. 10. Because DeSouza's Complaint does not state a plausible ADA claim and because state court is the better forum to adjudicate his state law claims, the

Court GRANTS the State's Motion to Dismiss.

**I. BACKGROUND**

DeSouza's account is as follows.  Since 1999, he has worked for the State in the Department of Administration, Division of Capital Asset Management and Maintenance.  Compl. 2.  And as of at least December 2020, he has had post-traumatic stress disorder ("PTSD"), which the State is aware of.  Id.

In early December of 2020, DeSouza's supervisor asked him to volunteer to transfer temporarily from his regular work site to another location.  Id.  For DeSouza, the transfer would require a "significantly further commute."  Id.  Because he worried the increased driving distance and corresponding traffic would worsen his PTSD symptoms, he declined the request to transfer.  Id.

But his supervisor directed him to transfer anyway.  Id.  This directive triggered an anxiety attack that caused DeSouza to miss work for some time while receiving medical treatment.  Id.  Seeking relief from the transfer order, DeSouza submitted a "Request for Reasonable Accommodations/Modifications form" to the State's Human Resources Disability Management Unit.  Id.

Two months later, DeSouza's accommodations request was formally denied.  Id. at 4.  The denial letter advised DeSouza "that the job description for [his position] stated that [the Division] 'is a state-wide operation which deploys Division staff to any location where they are needed to manage and maintain State

buildings and premises.'" Id. at 4. DeSouza was thus officially transferred to his new work site effective March 1, 2021.

That September, DeSouza fell and was injured on the job, also requiring him to miss work for some period. Id. DeSouza "was directed to work remotely," but his supervisor explained that he would need to return to work on November 1. Id. Then, in late November, DeSouza informed his supervisor that he needed to have surgery and the surgery was scheduled for December 1. Id. at 5. He expected to be out until December 16 and "requested to work remotely thereafter." Id. DeSouza never received "a meaningful response" to this request and so he returned to work on December 15, "having never been allowed to work remotely following the surgery." Id.

Meanwhile, DeSouza had his eyes on opportunities for promotion and transfer. See id. at 4-5. In March of 2021, "the position of Chief Property Management was posted online." Id. at 4. The same position was posted again that December, at which time DeSouza "applied for the position and was placed on the eligibility list but was ultimately not selected for an interview," Id. at 5. Overall, "[s]ince disclosing his disability and requesting an accommodation, [he] has been denied promotional and transfer opportunities despite being qualified . . . ." Id.

Sometime around May 10, 2022, DeSouza filed a charge of discrimination against the State with the federal Equal Employment

Opportunity Commission and the R.I. Commission for Human Rights. Id. at 2.  In turn, those agencies respectively issued him right to sue letters and DeSouza subsequently filed this lawsuit.  Id.

## II. DISCUSSION

The State moves to dismiss DeSouza's complaint on multiple grounds.  See generally State's Mem. Supp. Mot. Dismiss ("Def.'s Mem."), ECF No. 10-1.  For the reasons discussed below, the Court grants the Motion to Dismiss.

### A. Service of Process

The State first moves to dismiss DeSouza's case under Federal Rule of Civil Procedure 12(b)(5) because DeSouza failed to serve a copy of the Summons and Complaint within ninety days.  Def.'s Mem. 9-11; Def.'s Reply Supp. Mot. Dismiss. ("Def.'s Reply") 1-4, ECF No. 18; see Fed. R. Civ. P. 4(m), 12(b)(5).  Acknowledging that his service was untimely by fifteen days, DeSouza asks the Court for an extension.  Pl.'s Mem. L. Supp. Obj. Def.'s Mot. Dismiss ("Pl.'s Resp.") 2-3, ECF No. 15-1; Pl's Resp. Def.'s Reply ("Pl.'s Sur-Reply") 1-2, ECF No. 20.

The Court has discretion under Rule 4(m) to extend time of service, even without good cause.  See Radfar v. Crowley, 568 F. Supp. 3d 113, 115 (D. Mass. 2021); Fed. R. Civ. P. 4(m).  While service of process here was late, it was eventually completed, and the State does not argue that it suffered any prejudice as a result.  See Def.'s Mem. 9-11; Def.'s Reply 1-4.  Dismissal on

4

this ground also would be unnecessarily prejudicial to DeSouza and an inefficient use of judicial resources.  Thus, the Motion to Dismiss is denied as to untimely service of process.

**B. ADA Claims**

The State next moves the Court to dismiss each of DeSouza's ADA claims (together, Count One of the Complaint) under Rule 12(b)(6) because he fails to allege sufficient facts to plausibly claim that he is entitled to relief.  Def.'s Mem. 11-13; Def.'s Reply 4-7; see Fed. R. Civ. P. 12(b)(6).  To repeat, DeSouza's ADA claims are that the State unlawfully denied him reasonable accommodations for his PTSD, retaliated against him, and denied him promotion and transfer opportunities.  Compl. 6-7.

To survive the State's Motion to Dismiss, DeSouza's ADA claims must be "plausible."  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To be "plausible," DeSouza must plead facts which, accepted as true, enable the Court "to draw the reasonable inference that [the State] is liable for the misconduct alleged." See id. at 678.  "Plausible, of course, means something more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the Court] 'to draw on' [its] 'judicial experience and common sense.'"  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)

(quoting Iqbal, 556 U.S. at 679).

### 1. Alleged Denial of Reasonable Accommodations

To state a plausible ADA claim for failure to make reasonable accommodations, DeSouza must allege facts sufficient to show that (1) he suffers from a disability recognized by the ADA, (2) he is otherwise qualified to perform the "essential functions" of his job, and (3) the State knew of his disability and did not reasonably accommodate it upon request. See 42 U.S.C. § 12112(b)(5)(A); Sepúlveda-Vargas v. Caribbean Rests., LLC, 888 F.3d 549, 553 (1st Cir. 2018) (citing Lang v. Wal-Mart Stores E., L.P., 813 F.3d 447, 454 (1st Cir. 2016)).

The State first attacks DeSouza's reasonable accommodations claim based on the denial of his request not to transfer work sites, arguing that it is not plausible because DeSouza does not show that he is otherwise qualified to perform the essential functions of his job. Def.'s Mem. 17-18. DeSouza, it says, provides no direct description of what his job duties are or whether he could perform them; the only reference to job functions is the request denial letter's description of DeSouza's position being part of a "state-wide operation" that included deployment to "any location" where he was needed. Id.

Oddly, DeSouza does not contest this factual deficiency or seek leave to amend his Complaint. He instead counters that the deployment-to-any-location requirement, despite being part of the

job description "in a state handbook," is not necessarily an essential job function. Pl.'s Resp. 7. He argues that because he was initially asked only to "temporarily volunteer" to transfer work sites, whether the requirement was essential is a "factual question." Pl.'s Sur-Reply 3.

This dearth of facts dooms DeSouza's claim. Normally, the determination of whether a job function is "essential" is a fact-intensive inquiry decided on a "case-by-case basis." Sepúlveda-Vargas, 888 F.3d at 553 (citing Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 25 (1st Cir. 2002)). But here, DeSouza's relevant alleged facts are only the context of the transfer and the "state handbook" job description. The argument that the deployment at issue may not have been essential because it was initially framed as a request is belied by the fact that it was then turned into a directive. And the Court gives special weight to the written job description, as it must. 42 U.S.C. § 12111(8) ("[I]f an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."). For these reasons, DeSouza's reasonable accommodations claim on this basis is not plausible.

The State next strikes at DeSouza's reasonable accommodations claim stemming from the effective denial of his request to work remotely following his surgery, arguing that it is not plausible

7

because DeSouza fails to prove that the request was tied to his PTSD.  Def.'s Mem. 18; Def.'s Reply 4-6.  It asserts that because DeSouza "makes zero mention of what the surgery was for," his claim is "too vague" and he "failed to put [the State] on notice that [he] was seeking a reasonable accommodation for his specific disability."  Def.'s Mem. 18; Def.'s Reply 5-6.

DeSouza parries by referencing the fact that the State knew of his PTSD "at all relevant time[s]."  Pl.'s Sur-Reply 2.  He argues that the State's position "overlooks the obvious construction that [the State's] discriminatory actions were motivated by an animus towards [his] disability."  Pl.'s Resp. 8.

DeSouza's claim again fails for lack of sufficient factual allegations.  Under the ADA, a person must "link the requested accommodation to a disability, not merely invoke vague references to medical conditions or unnamed medical treatments." Stratton v. Bentley Univ., 113 F.4th 25, 54 (1st Cir. 2024) (citing Jones v. Nationwide Life Ins. Co., 696 F.3d 78, 89 (1st Cir. 2012)).  In his Complaint, DeSouza makes no reference to having told the State what the surgery was for, nor to whether it related  to his PTSD or another ADA-recognized disability.  In brief, DeSouza's reasonable accommodations claim here is not plausible.

### 2. Alleged Retaliation

To establish a plausible claim for retaliation under the ADA, DeSouza must allege facts to show that "he was engaged in protected

conduct, that he was subject to an adverse employment action, and that there was a causal connection between the adverse employment action and the conduct." Sepúlveda-Vargas at 555 (citing Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 106 (1st Cir. 2007)); see 42 U.S.C. § 12203. The challenged action must be "materially adverse," in that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Sepúlveda-Vargas at 555 (quoting Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 20 (1st Cir. 2006)).

As before, so too here: DeSouza's retaliation claim is not plausible because he does not allege sufficient facts. In conclusory fashion, DeSouza states that the "State retaliated against the Plaintiff for complaining about his discriminatory work environment." Compl. 5. While making a complaint about a discriminatory work environment is "protected conduct," nowhere in his Complaint does DeSouza mention doing so. See generally Compl. And, even taking the accommodations requests as complaints and assuming the failure to promote or transfer is an "adverse action," nowhere in DeSouza's Complaint does he link the alleged complaints to the adverse action. Id. This shortcoming is fatal. See Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 36-43 (1st Cir. 2011) (denying multiple ADA claims of retaliation for this reason).

Accordingly, DeSouza's retaliation claim is dismissed.

### 3. Alleged Denial of Promotion and Transfer Opportunities

The Court need not take long on this claim; both parties agree that it fails because DeSouza did not exhaust his administrative remedies.  See Def.'s Mem. 11-13 (raising failure to exhaust defense); Pl.'s Resp. 4 (noting that the State "is correct that there might not have been appropriate exhaustion" for this claim); Def.'s Reply 4 (commenting that DeSouza "concedes" this issue and the claim should be dismissed); Pl.'s Sur-Reply (declining to respond).  Thus, DeSouza's ADA claim for unlawful denial of promotion and transfer opportunities is dismissed for failure to exhaust.  See Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 31 (1st Cir. 2009).

### C. Remaining State Law Claims

As for DeSouza's state law claims (Counts Two, Three, and Four of the Complaint), the State moves to dismiss them all under Rule 12(b)(1) for lack of subject matter jurisdiction.  Def.'s Mem. 13-16; Def.'s Reply 7-9; see Fed. R. Civ. P. 12(b)(1).  Specifically, the State argues that it has not waived its sovereign immunity and so the Eleventh Amendment to the U.S. Constitution strips the Court of power to hear DeSouza's claims.  Def.'s Mem. 13-16; Def.'s Reply 7-9.  DeSouza disagrees.  Pl.'s Resp. 4-6; Pl.'s Sur-Reply 3-4.

But along with this unsettled jurisdictional question, arises

another: whether, following dismissal of DeSouza's federal claims, the Court should continue to exercise jurisdiction over his remaining state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim" when "the district court has dismissed all claims over which it has original jurisdiction.").  The Court elects to address the latter question first.  See Acheson Hotels, LLC v. Laufer, 601 U.S. 1, 4 (2023) (noting that courts "can address jurisdictional issues in any order" they decide).

Because these claims present "substantial question[s] of state law that [are] better addressed by the state courts," continued exercise of supplemental jurisdiction is not proper here.  See Zell v. Ricci, 957 F.3d 1, 15 (1st Cir. 2020) (quoting Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017)); Royal Canin U.S.A., Inc. v. Wullshcleger, No. 23-677, 2025 WL 96212, at *5 (U.S. Jan. 15, 2025) (explaining that in this context "the court may (and indeed, ordinarily should) kick the case to state court").  The remaining claims are dismissed for this reason.

## III. CONCLUSION

For the reasons set forth above, the Court GRANTS the State's Motion to Dismiss, ECF No. 10.

IT IS SO ORDERED.

_____
William E. Smith
Senior District Judge
Date: January 29, 2025